1  PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
   LAW OFFICES OF PAMELA Y. PRICE
2  PRICE AND ASSOCIATES
   A Professional Law Corporation
3  901 Clay Street
   Oakland, CA 94607
4  Telephone: (510) 452-0292
   Facsimile: (510) 452-5625
5  E-mail: pamela.price@pypesq.com

6  Attorneys for Plaintiff
   RENE PEINADO
7

8
                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10

11

12 RENE PEINADO,                        )  NO. C11-01799 EMC (JSC)
                                        )
13         Plaintiff,                   )
                                        )
14 v.                                   )
                                        )
15 CITY AND COUNTY OF SAN               )
   FRANCISCO, ELIAS                     )
16 GEORGOPOULOS, AND DOES 1-50,         )
                                        )
17         Defendants.                  )
                                        )
18 ─────────────────────────────────    )
                                        )
   AND RELATED CROSS-ACTION             )
19 ─────────────────────────────────    )

20

21      **PLAINTIFF'S MEMORANDUM OF POINTS
        AND AUTHORITIES IN OPPOSITION TO
22      DEFENDANTS' MOTION FOR SUMMARY
        JUDGMENT**
23
                DATE:   NOVEMBER 20, 2014
24              TIME:   1:30 P.M.
                CTRM:   5, 17TH FLOOR
25
                HON. EDWARD M. CHEN
26

27

28

13018P301MSJ-PYP

PLAINTIFF'S OPPOSITION TO MSJ (C11-01799 EMC)

**Introduction**

This case is about a rogue Parking Control Officer with a bad temper and a propensity to twist the facts. Despite multiple lawsuits and judgments against him and his employer, the City and County of San Francisco ("CCSF"), Defendant Elias Georgopoulos remains employed and blatantly unrepentent. Plaintiff Rene Peinado opposes Defendants' Motion for Summary Judgment on the grounds that the record supports his malicious prosecution claim against Defendant Elias Georgopolous. There is specific and admissible evidence supporting a finding of genuine issue of disputed material facts in regard to the malicious prosecution claim.[1] There is no basis to apply the doctrine of collateral estoppel to a preliminary hearing, and no basis to apply the doctrine of qualified immunity to Defendant Georgopoulos' conduct.

There is also no question that Defendant Georgopoulos <u>was</u> acting under color of law at all times that he sought to deprive Mr. Peinado of his Fourth Amendment right to be free from unreasonable and/or unlawful seizures. In this case, not only was Mr. Peinado dragged from his office and incarcerated, his vehicle was also seized, impounded and ultimately sold while he was still fighting to clear his name. Defendant Georgopoulos' conduct in this matter is absolutely despicable and warrants a trial to award damages as well as punitive damages.

**Summary of Facts**

On March 23, 2005, following a brief encounter with Plaintiff Rene Peinado in front of 650 California Street, near Montgomery in San Francisco, Defendant Georgopoulos ("EG") falsely accused Mr. Peinado of hitting him with his Range Rover. (Declaration of Rene Peinado In Opposition to Motion for Summary Judgment (hereinafter "RP DEN") @ 1:23-2:12.) According to Defendant EG, as he was attempting to give Mr. Peinado a parking ticket, Mr. Peinado looked "dead at him" in the eye with "a cold stare" and then "came right for [him]."[2] (RP DEN, Ex. A @

---

[1] Mr. Peinado does not oppose dismissal of the Monell claim under the Second Cause of Action.

[2] Defendant EG has testified in detail about the events of March 23, 2005 at a hearing before the DMV on October 31, 2005, and at the San Francisco Superior Court Preliminary Hearing on August 17, 2006. (A true and correct copy of excerpts from the transcript of the DMV hearing is

26:4-11.) According to Defendant EG, Mr. Peinado ran him down "as if [he] were a cone" and he landed on the hood of the car "like a hood ornament." (RP DEN, Ex. A @ 42:10-21; Ex. B @ 7:26-28; 22:10-18.) Miraculously, Defendant EG claims that he was able to push himself off of the hood, land on his feet, and then follow Mr. Peinado on a wild ride through the streets of San Francisco. (RP DEN, Ex. A @ 19:13-21:2; Ex. B @ 8:23-24; 12:20-28.)

According to Defendant EG, he followed Mr. Peinado down California Street, saw him "blow" every red light he could through the streets of downtown until he "lost him" somewhere near Union Square. (RP DEN, Ex. A @ 19:13-21:2.) Defendant EG claims that he saw Mr. Peinado run at least four (4) red lights in his effort to get away from him.[3] (RP DEN, Ex. B @ ____.) Mr. Peinado had no idea he was being followed. (RP DEN @ 2:10-11.) Defendant EG pulled behind Mr. Peinado and yelled, "Stop! You hit me!" (RP DEN @ 2:11.) Mr. Peinado denied the accusation and drove away when the light turned green. (RP DEN @ 2:11-12.)

Three days later, four police officers showed up outside Mr. Peinado's office. (RP DEN @2:13.) Grabbing him and slamming him on the hood of their cruiser, they arrested Mr. Peinado. (RP DEN @ 2:13-14.) They entered the office building's parking garage and impounded Mr. Peinado's business vehicle, a 1997 Land Rover. (RP DEN @ 2:14-15.) The vehicle was eventually lost because of the storage fees imposed by the tow company ($4,477). (RP DEN @ 2:15-16.)

Defendant EG's version of the incident is denied by Mr. Peinado and controverted by the contemporaneous medical records. (RP DEN @ 1:23-2:12.) Immediately following the incident, Defendant EG was taken by ambulance to San Francisco General Hospital. (RP DEN, Ex. B @ ____.) Following an extensive examination and evaluation, including x-rays, the medical personnel

---

attached as Exhibit A to the Declaration of Rene Peinado in Opposition to the Motion for Summary Judgment; a true and correct copy of the excerpts from the preliminary hearing transcript is attached as Exhibit B.)

[3] Notably, the incident started at approximately 11:45 a.m. According to Defendant EG, Mr. Peinado drove recklessly through the heart of the financial district on streets crowded with pedestrians and cars "blowing every light he could." Defendant EG testified at the preliminary hearing that Mr. Peinado ran the red light at California & Montgomery during the noon hour, successfully traversing the three-way pedestrian walk sign.

1  found no signs of injury and released Defendant EG to return to work. (RP DEN, Ex. B @ ____;
2  Declaration of Pamela Y. Price In Opposition to Defendants' Motion for Summary Judgment, Ex.
3  A.) There was no fracture of his left shoulder nor any signs of injury to the left shoulder. RP DEN,
4  Ex. B @ ____.) There were no abrasions found nor any obvious signs of trauma to his body. (RP
5  DEN, Ex. B @ ____.) There was no dislocation of any kind. (RP DEN, Ex. B @ ____.) There was
6  no hematoma on any part of his body whatsoever. (RP DEN, Ex. B @ ____.) There was no sign of
7  any sort of scape or abrasions or trauma to his ribs. (RP DEN, Ex. B @ ____.) The cardiovascular
8  signs were within normal limits. (RP DEN, Ex. B @ ____.) There was no trauma or abrasions to
9  his head or skull, nor any intracranial hemorrhage. (RP DEN, Ex. B @ ____.) As the Court noted
10 at the preliminary hearing, "the records themselves are completely uncorroborative of any kind of
11 injury whatsoever."[4] (RP DEN, Ex. B @ ____.)

12 Notwithstanding the lack of any discernable injury, Defendant EG filed a workers'
13 compensation claim and took off work for two to three months. (RP DEN, Ex. ____ @ ____.)
14 Based on Defendant EG's claim that Mr. Peinado intentionally hit him with a car, Mr. Peinado was
15 arrested and charged with a felony assault with a deadly weapon and a misdemeanor hit and run.
16 (RP DEN @ 2:20-21.) At the preliminary hearing held on August 6, 2006, following the
17 presentation of the evidence, the Court exercised her discretion to reduce the felony to a
18 misdemeanor. (RP DEN, Ex. B @ 65-70.)

19 The prosecution of these charges lasted four (4) years. (RP DEN @ 2:21-22.) The case was
20 finally dismissed on the Court's own motion on April 14, 2009 in the interests of justice under
21 Penal Code Section 1385. (Declaration of Michael K. Hinckley (hereinafter "Hinckley DEN") @
22 2:14-20.) Throughout the prosecution of the case, Mr. Peinado vociferously maintained his
23 innocence and never wavered in his desire to fight the case if necessary to prove his innocence. (RP
24 DEN @ 2:23-24; Declaration of Lidia Stiglich (hereinafter "Stiglich DEN") @ 2:6-7.)

25 Mr. Peinado was represented by seasoned attorney Lidia Stiglich. (Stiglich DEN @ 2:15-
26 16.) She expressed to Judge Kevin McCarthy and the District Attorney that Mr. Peinado was

---

28  [4] Comments by the Hon. Judge Susan Breall contained in the Reporter's Transcript
of Proceedings, Price DEN, Ex. B @ 67:1-23.

adamant that he was innocent of the allegations against him. (Stiglich DEN @ 2:17-20.) They also discussed Defendant EG's serious credibility problems. (Stiglich DEN @ 3:1-5.) Attorney Stiglich shared with the Court Defendant EG's reputation as dishonest and an oddball loose cannon. (Stiglich DEN @ 3:5-7.) Attorney Stiglich was not able to reach an agreement with the District Attorney to dismiss the case. (Stiglich DEN @ 3:9-10.) She focused her attention in getting the Court to dismiss the case pursuant to Penal Code Section 1385.

Defendant EG has a well-documented pattern of engaging in conduct that causes "fear and trepidation" both in and out of the workplace. On July 14, 2000, the Hon. Judge Linda Colfax, then a Deputy Public Defender employed by CCSF, had a close encounter with Defendant EG where he engaged in aggressive and intimidating behavior which frightened her. (RP DEN, Ex. B @ ____.) She testified at Mr. Peinado's preliminary hearing that Defendant EG followed her through the streets of San Francisco in an enraged state, screaming obscenities at her. (RP DEN, Ex. B @ _____.) In his response dated August 25, 2000, Defendant EG accused Judge Colfax of cutting him off, tailgating and yelling profanities at him. (PYP DEN, Ex. C.)

On November 9, 2001, then DPT Assistant Director Theresa Zucconi reported that Defendant EG was disrespectful, argumentative and confrontational toward her at work. (PYP DEN, Ex. D.) He received a written reprimand for his conduct. (PYP DEN, Ex. D.) In response, Defendant EG refused to take anger management classes and upon being advised of the decision to issue a written reprimand, slammed his chair in anger and left the meeting in an angry and hostile manner. (PYP DEN, Ex. D.)

On April 20, 2005, Defendant EG's then Supervisor, Kathy Sullivan, requested that Defendant EG be disciplined for being "disruptive, insubordinate" and refusing to follow her instructions. (PYP DEN, Ex. E.) Her report was based on his conduct at a staff meeting on April 20, 2005. (PYP DEN, Ex. E.) She recommended disciplinary action and anger management training based on Defendant EG's "angry outbursts and disruptive behavior." (PYP DEN, Ex. E.)

### Standard of Review

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper only when "there is no genuine issue as to any material fact." In judging evidence at the summary judgment

13018P300MSJ PYP                                -4-
PLAINTIFF'S OPPOSITION TO MSJ  (C11-01799 EMC)

1  stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws
2  all inferences in the light most favorable to the nonmoving party. (*T.W. Elec. Service, Inc. v.*
3  *Pacific Elec. Contractors Ass'n*. 809 F.2d 626, 630-631 (9th Cir. 1987, citing *Matsushita Elec.*
4  *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Ting v. United States*, 927 F.2d 1504,
5  1509 (9th Cir. 1991).)

6  The district Court is required to review the record to determine whether disputed issues of
7  material fact are present. (*Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249
8  F.3d 1132, 1136 (9th Cir. 2001), citing *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th
9  Cir. 1978) and *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1037 (9th Cir. 2000).)

10  "In ruling on a motion for summary judgment, the court is to determine whether a genuine
11  issue of material fact exists, viewing all evidence and factual inferences 'in light most favorable to
12  the party opposing the motion.'" (*Reed v. Lockheed Aircraft Corporation,* 613 F.2d 757, 759 (9th
13  Cir. 1980) (quoting *Ramirez v. National Distillers and Chemical Corp.*, 586 F.2d 1315, 1318 (9th
14  Cir. 1978).) The Ninth Circuit will affirm only if the record, read in the light most favorable to the
15  nonmoving party, establishes that there is no genuine issue of material fact and the moving party is
16  entitled to judgment as a matter of law. (*Porter v. CDC,* 383 F.3d 1018, 1024 (9th Cir. 2004); *Lew*
17  *v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985).)

18  **I.  Defendant EG Is Not Entitled to Invoke the Doctrine of Collateral Estoppel**
19  
20  In *Kourtis v. Cameron*, 419 F.3d 989, 997 (9th Cir. 2000), the Ninth Circuit noted that there
21  are several factors that guide a determination of whether an issue litigated in a prior proceeding is
22  identical to the one raised in later proceedings. The Court pointed out that "relevant considerations
23  include whether there is a substantial overlap between the evidence in the two cases . . ." citing
24  *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999).

25  The main issue in this case is whether the criminal prosecution was induced by fraud,
26  corruption, perjury, fabricated evidence, or other wrongful conduct by Defendant EG undertaken in
27  bad faith. (*Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004); *Usher v. City of Los*
28  *Angeles,* 828 F.2d 556, 562 (9th Cir. 1987) citing *Singleton v. Perry*, 45 Cal.2d 489, 494, 289 P.2d
794, 798 (1955).) Malicious prosecution actions are not limited to suits against prosecutors but

may be brought, as here, against other persons who have wrongfully caused the charges to be filed. (*Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002).)

In *Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994), the Ninth Circuit held that absent a showing that evidence not available to the arresting officer was presented at the preliminary hearing, a finding of sufficiency of the evidence to require the defendant to stand trial is a finding of probable cause to arrest the defendant. (*Accord, Morley v. Walker*, 175 F.3d 756, 760–761 (9th Cir.1999).) Collateral estoppel does not apply, however, when the decision to hold a defendant to answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct by state or local officials. (*See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004); *Haupt*, 17 F.3d at 290, n. 5; *Morley v. Walker*, 175 F.3d at 760-61; *McCutchen v. City of Montclair*, 73 Cal.App.4th 1138, 87 Cal.Rptr.2d 95, 101 (1999).)

Mr. Peinado's case falls squarely within the exception to the rule. The signature issue in the case is whether Defendant EG's tale of a calculated assault with a deadly weapon and a flight through the crowded streets of San Francisco is a fabricated fantasy or something that actually happened.

**II.  The Disputed Circumstances of the Dismissal of the Criminal Case Create A Triable Issue of Fact**

Defendants' main defense is that the criminal case was dismissed as a result of a negotiated disposition which included an agreement for Mr. Peinado to attend and complete the Pretrial Diversion Program. The flaw in the Defendants' contention is that there are factual disputes about the circumstances of the dismissal which must be determined at trial. Specifically,

- there was no agreement with the District Attorney to dismiss the charges - the charges were dismissed by Judge Meeks on Judge McCarthy's motion over the objections of the District Attorney

- the dismissal was entered on the Court's own motion after the Court was presented with evidence of mendacity by Defendant EG and a history of aggressive and erratic behavior

- According to the 2007 Eligibility Criteria, Mr. Peinado was not eligible for the Pretrial Diversion Program and diversion was denied on April 22, 2008.

- Mr. Peinado did not participate in a normal diversion program - the Court allowed him to submit 26 hours of volunteer service with the Golden Gate National Parks Association.

- The attorneys for Mr. Peinado steadfastly insisted upon his innocence and refused to negotiate or accept any compromise that undermined Mr. Peinado's contention of factual innocence of the charges.

In *Awabdy v. City of Adelanto*, 368 F.3d *supra* at 1068, the Court held that "a dismissal in the interests of justice satisfies the requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant. Here, the attorneys were steadfast in their position that the case could only be dismissed pursuant to Penal Code Section 1385 ("in the interests of justice"). In *Jaffe v. Stone*, 18 Cal.2d 146 (1941), the California Supreme Court held that if a dismissal is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement.

It is also well settled that if the circumstances of the termination of the criminal case are conflicted, the determination of the reasons underlying the dismissal is a question of fact. (*Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399, 69 Cal. Rptr.3d 561; *accord, Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 217, 105 Cal.Rptr.3d 683; *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 128-129, 151 Cal.Rptr.3d 117; *Thao v. Donovan*, 2012 WL 4052032 *9-11 (E.D.Cal. 2012); *Dugan v. Nance*, 2013 WL 6633072 *6-7 (C.D.Cal. 2013); *Gressett v. Contra Costa County*, 2013 WL 6671795 *2-3 (N.D.Cal. 2013).)

In *Gressett*, 2013 WL 6671795 *3, citing *Awabdy*, 368 F.3d at 1068, this Court also acknowledged that a dismissal in the interests of justice satisfied the favorable termination requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant. Here, there is also evidence that the trial court doubted the legitimacy of the charge or as to Mr. Peinado's guilt. The criminal prosecution was dismissed on the Court's own motion over the objections of the prosecutor! (Hinckley DEN @ 2:14-26; *see also* Stiglich DEN @ 2:13-3:13.)

### III. Defendant Georgopolous Is Not Entitled to Qualified Immunity

Qualified immunity protects government officials performing discretionary functions where their conduct is objectively reasonable. (*See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271

(1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law"); *see also Herb Hallman Chevrolet, Inc. v. Nash–Holmes*, 169 F.3d 636 (9th Cir. 1999) (affirming a grant of summary judgment to Washoe County prosecutors on the basis of absolute and qualified immunity).) We have held that a plaintiff must make not only a substantial showing of deliberate falsehood or reckless disregard for the truth regarding an officer's statements in an affidavit for a warrant, but establish that "without the dishonestly included or omitted information," the warrant would not have issued. (*Hervey v. Estes*, 65 F.3d 784, 788–89 (9th Cir. 1995).)

In this case, the evidence plainly suggests that Defendant EG fabricated his entire tale for his own purposes. The law cannot and does not contenance deliberate falsification of events and information by a public official acting under color of law.

### IV. Defendant Georgopolous Was Acting Under Color of Law

At all times during the encounter with Mr. Peinado, Defendant EG was acting under color of law. Ironically, the entire chain of events started with a citation for falling to curb the wheels of the vehicle during the brief period of time that Mr. Peinado was away from the car. (RP DEN, Ex. B @ 4:21-26.) Defendant EG was on duty and acting in his official capacity throughout the incident, including when he was calling for police back-up to arrest Mr. Peinado.

### V. Mr. Peinado Did Not Authorize A Negotiated Disposition

It is undisputed that Mr. Peinado did not authorize a negotiation disposition of the underlying criminal case such that he can be charged with a knowing waiver of his right to pursue this lawsuit. In the event the Court is inclined to find that the dismissal of the criminal prosecution did not constitute "a favorable termination," Mr. Peinado can not be penalized since he did not ever authorize any type of negotiated disposition or waive his rights against Defendant EG. (*See Blanton v. Womancare, Inc.*, 38 Cal.3d 396 (1985).

### CONCLUSION

For the reasons set forth in the Motion, Defendants' Motion for Summary Judgment should be denied except as to the Second Cause of Action.

Dated: October 30, 2014         /s/ *Pamela Y. Price*
                                PAMELA Y. PRICE, Attorneys for Plaintiff