UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE PEINADO, | No. C-11-1799 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*, | **(Docket No. 93)** |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Rene Peinado filed an amended complaint in this action on March 1, 2013, against Defendants the City and County of San Francisco (the "City") and Elias Georgopoulos asserting two causes of action under 42 U.S.C. § 1983 for (1) malicious prosecution and (2) a *Monell* claim against the City. First Amended Complaint ("FAC"), Docket No. 37. Defendants have moved for summary judgment on all of Plaintiff's claim on a number of grounds. Plaintiff does not oppose dismissal of her second cause of action (the *Monell* claim against the City). Accordingly, this claim will be **DISMISSED**. In addition, for the following reasons, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's malicious prosecution claim against Georgopolous.

## II. FACTUAL & PROCEDURAL BACKGROUND

On March 23, 2005, Plaintiff had an encounter with Georgopoulos, a parking control officer for the San Francisco Municipal Transportation Agency, in front of 650 California Street. FAC ¶ 10, 5. According to Georgopoulos, he noticed a black Range Rover parked on a hill with its wheels

1 straight. Preliminary Hearing Transcript ("Prelim. Hearing") at 4:10-13 (Docket No. 94-1). He
2 printed out a citation for the violation and when he approached the vehicle, Plaintiff had returned to
3 the vehicle and gotten inside. *Id.* at 6:1-4. Georgopolous claims that, at this point, Plaintiff "looked
4 directly at [Georgopolous] and took off. And he hit [Georgopolous] . . . . In the chest, knee area."
5 *Id.* at 6:25-26. Georgopoulos claims he landed on the hood of the Range Rover "like the hood
6 ornament" and then was thrown to the left. *Id.* at 7:27-28. He asserts that he told Plaintiff to stop,
7 called it in on the emergency channel, and then jumped in his vehicle and followed Plaintiff. *Id.* at
8 8:18-28. According to Georgopolous, as he was following Plaintiff, Plaintiff ran red lights for
9 several blocks. *Id.* at 9:18 - 10:9.
10       Plaintiff's account of the encounter differs greatly. He asserts that when he arrived at his
11 Range Rover, Georgopolous "approached [his] vehicle and slammed his hand on the front of it," at
12 which point Plaintiff "backed away from him, made a u-turn and drove away." Declaration of Rene
13 Peinado ("Peinado Decl.") ¶ 3 (Docket No. 101). Plaintiff states he never made physical contact
14 with Georgopolous and was not followed through the streets of San Francisco by Georgopolous
15 (which, Plaintiff points out, would have been filled with lunchtime pedestrian and vehicle traffic).
16 *Id.* ¶ 4. Plaintiff does admit that "[a]t some point [Georgopolous] pulled alongside me and yelled,
17 'Stop! You hit me!' I told him he was crazy and drove away when the light turned green." *Id.*
18 Three days later, Plaintiff was arrested by the San Francisco Police Department and his Range Rover
19 was impounded. Peinado Decl. ¶ 5.
20       Initially, Plaintiff was charged with misdemeanor hit and run and felony assault with a
21 deadly weapon. *Id.* ¶ 6. A preliminary hearing was held on August 17, 2006. A number of
22 witnesses testified, including Georgopolous and other individuals who had encountered
23 Georgopolous and filed complaints against him. This testimony led Superior Court Judge Susan
24 Breall to observe that Georgopolous is "not always calm, and he can at times be a hot head."
25 Prelim. Hearing at 66:22-25. At the end of the preliminary hearing, the judge reduced the felony
26 assault claim to a misdemeanor, noting that the medical records belied Georgopolous' claim that he
27 had been struck – the court noted there were no signs of abrasions, fractures, dislocation, hematoma,
28 scrapes, or other signs of trauma. Prelim. Hearing at 66-67; *see also id.* at 67:26-27 (finding that the

"records themselves [were] completely uncorroborative of any kind of injury whatsoever"). Ultimately, however, the court concluded that the case presented a "serious incident" and that it was a "case that probably needs to be tried in a criminal court." *Id.* at 68:1-2.

Plaintiff's criminal attorney was Lidia Stiglich (now Judge Stiglich).[1] In her declaration, she states that Plaintiff "vociferously denied the allegations and maintained his innocence" and wanted the matter dismissed without any admission of guilt. Declaration of Lidia Stiglich ("Stiglich Decl.") ¶ 4 (Docket No. 99). At the same time, she notes that Plaintiff was concerned about the effect of the action on his security clearance (needed as part of his occupation) and a contested child custody situation. *Id.* Ms. Stiglich maintains that she had numerous "off the record" discussions with the state court judge presiding over Plaintiff's criminal case – Superior Court Judge Kevin McCarthy – and the district attorney in an attempt to have the action dismissed. *Id.* ¶ 5. Her efforts involved raising Georgopolous' questionable credibility as well as his history of threatening and violent conduct. *Id.* ¶¶ 6-7. She asserts that the district attorney refused to dismiss the action outright and, as a result, she focused on trying to persuade the judge to dismiss the action in the "interest of justice" pursuant to Cal. Penal Code § 1385. *Id.* ¶ 8. She asserts that Plaintiff and the district attorney never agreed to have the case dismissed. *Id.* ¶ 11.

On March 25, 2008, Plaintiff, Ms. Stiglich, and the district attorney appeared before Judge McCarthy. The following exchange occurred:

> **Ms. Stiglich:** Your honor . . . it's my understanding that the people will amend the complaint to reflect a 242[2] for purposes of referring him to pretrial diversion for 24 hours – I'm sorry – 25 hours of the [sic] community service, and that there is an agreement there is good cause for this referral.
>
> **The Court**: Okay
>
> **Ms. Richardson**: That's the agreement that I have, your honor. And at this time, based upon the negotiated – based upon that, the people move to amend the complaint to reflect a count 242 of the penal code.

---

[1] In November 2012, Ms. Stiglich was appointed to the bench of the Second Judicial District Court in Reno, Nevada by Nevada Governor Brian Sandoval. Stiglich Decl. ¶ 1.

[2] Cal. Penal Code 242 defines battery.

3

Transcript of Proceedings ("Crim. Trans.") at 2:9-19 (Docket No. 94-3). Ms. Stiglich then raised the issue of the *form* of any subsequent dismissal:

> **Ms. Stiglich**: Your honor, with respect to this matter, the only other issue is that in light of his security clearance, we did have discussions about what code section at the end that it would be dismissed under if he successfully completes and that's open.

*Id.* at 3:1-5. Ms. Stiglich did not request Judge McCarthy entertain a dismissal under Penal Code § 1385 for insufficient evidence. Regarding the original counts, Judge McCarthy asked the district attorney if he wanted "count one and two trailing successful diversion," to which the district attorney replied, "correct." *Id.* at 3:10-14. Judge McCarthy did not comment on the strength of the prosecutor's evidence.

The parties appeared before the court again on April 22, 2008. At this proceeding, Ms. Stiglich confirmed that Plaintiff was going to "go to pretrial diversion just for purposes of monitoring community service." *Id.* at 4:5-6. Judge McCarthy similarly noted that it was "informal pretrial diversion," because Plaintiff was not eligible for formal diversion. *Id.* at 4:9, 11-12. However, both Ms. Stiglich and the court noted that pretrial diversion would be monitoring Plaintiff for a total of 25 hours of community service. *Id.*

According to Pretrial Diversion records, Plaintiff advised Pretrial Diversion on May 13, 2008 that he was "not sure if he will take this program." Declaration of Allison McCovey ("McCovey Decl."), Ex. A, at 2 (Docket No. 95-1). On July 25, 2008, Pretrial Diversion determined that restitution in the amount of $30 was owing to Georgopolous, and notified Plaintiff. *Id.* at 3. On August 4, 2008, Plaintiff came into the office and stated he was aware of both the Pretrial Diversion user fee and restitution amount and would mail in a payment. *Id.* The $500 user fee was paid by Plaintiff on December 12, 2008, and Pretrial Diversion moved $30 of that fee over to Plaintiff's owing restitution. *Id.* Plaintiff was notified of this. *Id.* During a December 15, 2008 proceeding in which Plaintiff's appearance was waived, the clerk of the court reported that "[r]estitution has been paid." Crim. Trans., at 6:5.

On February 23, 2009, Pretrial Diversion records reflect that Plaintiff completed 26 hours of community service for Golden Gate Parks Conservancy between January 31, 2009 and February 15,

2009. McCovey Decl. at 3. Pretrial Diversion credited Plaintiff as having completed his community service on April 3, 2009. *Id.*

A final hearing was held on April 14, 2009, with attorney Mike Hinckley representing Plaintiff. Judge Perker Meeks, rather than Judge McCarthy, presided over this hearing. *See* Docket No. 94-5. During the hearing, Mr. Hinckley asserted that the case should be dismissed "1385 for insufficient evidence." April 14, 2009 Transcript at 2:16 (Docket No. 94-5). This is the first reference in the record in which dismissal for insufficient evidence was raised by anyone. Mr. Hinckley then stated:

> **Mr. Hinckley**: . . . . If you look at the report, it doesn't have a recommendation disposition because it was a negotiated disposition between the defense and Judge McCarthy. And the agreement would be – pretrial was to monitor the – what was to occur, and it was to be dismissed 1385[3] specifically.

*Id.* at 2:20-25. The district attorney present at the time (who was different than the one present in the earlier proceedings), agreed that the matter was to be dismissed in light of the community service and restitution, but disagreed with the form of dismissal, arguing that the dismissal should be "1001.7" as a diversion case.[4] *Id.* at 3:1-4. The parties continued to dispute the form of dismissal, with Mr. Hinckley maintaining that Judge McCarthy and the defense had negotiated a 1385 dismissal for insufficient evidence if community service was completed:

> **The Clerk:** So it would be interest of justice, then?
>
> **Mr. Hinckley**: No, it's not. It's insufficient evidence. This was important at the time, and that's why it was negotiated, and that's why he did it. And so – it doesn't matter to anybody but him. And so I think that's why Judge McCarthy agreed to do it.

*Id.* at 4:18-23. The district attorney continued to assert that Plaintiff's case was a diversion one and that he could not "dismiss a diversion case 1385." *Id.* at 4:8-11. After a recess in which Judge

---

[3] Cal. Penal Code § 1385 provides that a judge may "either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Cal. Penal Code § 1385(a). The "reasons for the dismissal must be set forth in an order entered upon the minutes." *Id.*

[4] Cal. Penal Code § 1001.7 provides for dismissal where a "divertee has performed satisfactorily during the period of diversion."

5

1  Meeks suggested the parties approach Judge McCarthy to see if he would handle the dismissal, the
2  parties returned to Judge Meeks, and the following occurred:

> **The Clerk:** It's going to be your motion, Your Honor. It's not going to be the D.A.'s motion.
>
> **The Court:** It was Judge McCarthy.
>
> **Mr. Hinckley:** It's Judge McCarthy's motion, Your Honor.
>
> **The Court:** All right. I'm granting Judge McCarthy's motion. Dismiss 1385. I don't know how you're going to come up with this. Judge McCarthy's motion was being granted by Judge Meeks.

*Id.* at 5:12-19. Judge Meeks announced no finding of insufficiency of evidence.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255, 106 S.Ct. 2505.

### IV.   DISCUSSION

In order to prevail on his malicious prosecution claim under 42 U.S.C. § 1983, Plaintiff must show that Georgopolous "'prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). The elements of a malicious prosecution claim brought under § 1983 incorporate state law. *Tranquilla v. City and County of San Francisco*, No. CV-11-

04763 JSC, 2014 WL 554536, at *3 (N.D. Cal. Feb. 7, 2014). A malicious prosecution claim in California has three elements, specifically that the prosecution: (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006). "Because the tort of malicious prosecution has a potential chilling effect on the willingness of persons to report crimes or pursue legal rights and remedies in court, its requirements must be strictly enforced." *Ferreira v. Gray, Cary, Ware & Freidenrich*, 87 Cal. App. 4th 409, 413 (2001).

The Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact as to whether he received a "favorable termination" of his criminal case. As noted above, "[f]avorable termination 'is an essential element of the tort of malicious prosecution, and it is strictly enforced.'" *Staffpro, Inc. v. Elite Show Servs., Inc.*, 136 Cal. App. 4th 1392, 1400 (2006) (quoting *Ferreira*, 87 Cal. App. 4th at 413). "'If [the termination] is of such a nature as to indicate the innocence of the accused, it is a favorable termination' but, '[i]f, however, the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination.'" *Gressett v. Contra Costa County*, No. C-12-3798 EMC, 2013 WL 2156278, at *11 (N.D. Cal. May 17, 2013) (quoting *Jaffe v. Stone*, 18 Cal. 2d 146, 150 (1941)). Where the underlying action is terminated in some manner other than by a judgment on the merits, the "court must examine the record to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed." *Id.*; *see also Oviedo v. Windsor Twelve Properties, LLC*, 212 Cal. App. 4th 97, 129 (2013) (same). In addition, where "evidence of the circumstances of the termination is conflicted, 'the determination of the reasons underlying the dismissal is a question of fact.'" *Daniels v. Robbins*, 182 Cal. App. 4th 204, 217 (2010) (quoting *Sycamore Ridge Apartments LLC v. Naumann*, 157 Cal. App. 4th 1385, 1399 (2007)).

As detailed above, the criminal action against Plaintiff was dismissed on motion by the superior court under California Penal Code § 1385. This provision provides: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be

7

set forth in an order entered upon the minutes." Cal. Penal Code § 1385(a).  California courts have noted that dismissals "in the interests of justice" under this section do not necessarily reflect on the guilt or innocence of the criminal defendant because such a dismissal "does not necessarily imply factual innocence, but rather may reflect the result of a negotiated or pragmatic disposition of the case." *People v. Matthews*, 7 Cal. App. 4th 1052, 1056 (1992).  Accordingly, courts have found that "interest of justice" dismissals, in themselves, do not qualify as a termination in favor of a criminal defendant for malicious prosecution purposes.  *See, e.g.*, *Nhia Kao Vang v. Decker*, No. 2:12-cv–01226-MCE-AC, 2013 WL 1420674, at *8 (E.D. Cal. Apr. 8, 2013).  This is especially true where the dismissal is the result of a negotiated settlement; in *Minasian v. Sapse*, 80 Cal. App. 3d 823 (1978), the California Court of Appeal stated:

> A dismissal resulting from negotiation, settlement, or consent is generally not deemed a favorable termination of the proceedings.  In such a case the dismissal reflects ambiguously on the merits of the action as it results from the joint action of the parties, thus leaving open the question of defendant's guilt or innocence.  Similarly ambiguous is the dismissal of criminal proceedings "in the interests of justice," as this term ". . . implies considerations which would favor each side to this litigation."

*Id.* at 827 n.4 (citations omitted) (quoting *De La Riva v. Owl Drug Co.*, 253 Cal. App. 2d 593, 600 (1967)); *see also Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 882 (1992) (dismissals based on negotiated settlement generally will "not constitute favorable termination of an action for the purposes of a malicious prosecution claim," because "dismissal due to settlement, negotiation or compromise reflects ambiguously on the merits of the action and leaves open the question of the defendant's guilt or innocence.").  To be sure, the Ninth Circuit has noted that an "interest of justice" dismissal can constitute a favorable termination "if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant." *Awabdy*, 368 F.3d at 1068.

The Court begins by noting that Plaintiff's criminal case was dismissed by Judge Meeks on motion from Judge McCarthy. *See* April 14, 2009 Transcript at 5:16-19 ("All right.  I'm granting Judge McCarthy's motion.  Dismiss 1385.  I don't know how you're going to come up with this.  Judge McCarthy's motion was being granted by Judge Meeks.").  Accordingly, under *Awabdy*, the

Court must determine whether there is a basis for a jury to conclude that, in moving to dismiss Plaintiff's case under § 1385, either Judge McCarthy or Judge Meeks believed that the action against Plaintiff "lacked merit or would result in a decision in" his favor. *Awabdy*, 368 F.3d at 1068. The Court concludes there is no basis in the record to so conclude.

To begin, there are no statements by Judge McCarthy (or Judge Meeks) on the state court record that indicate either judicial officers' views of the prosecution's case or of the likely outcome of the case should it proceed to trial. The record does reveal that Judge Susan Breall – the judge who conducted Plaintiff's preliminary hearing and heard evidence of Georgopolous history and the fact that the medical evidence did not support his claimed injuries – used her discretion to reduce the felony charges to misdemeanors; but despite that, she found that the case presented a "serious incident" and was one that "probably needs to be tried in a criminal court." Prelim. Hearing Tr. at 68:1-2. In any event, Judge Breall was not involved in the dismissal of the case. Judges McCarthy and Meeks were, and they said nothing of the merits of the case against Mr. Peinado.

As noted above, dismissal based on a negotiated settlement generally will not constitute a favorable termination. Here, the record of proceedings before Judge McCarthy and Judge Meeks made clear that Plaintiff entered into a negotiated agreement to perform community service in exchange for dismissal of his criminal action. For example, on March 28, the following exchange occurred:

> **Ms. Stiglich:** Your honor . . . it's my understanding that the people will amend the complaint to reflect a 242[5] for purposes of referring him to pretrial diversion for 24 hours – I'm sorry – 25 hours of the [sic] community service, and that *there is an agreement* there is good cause for this referral.
>
> **The Court**: Okay.
>
> **Ms. Richardson**: *That's the agreement that I have*, your honor. And at this time, *based upon the negotiated* – based upon that, the people move to amend the complaint to reflect a count 242 of the penal code.

---

[5] Cal. Penal Code 242 defines battery.

1  Crim. Trans. at 2:9-19 (emphases added). Plaintiff's attorney stated the only "open" question was
2  the precise section under which Plaintiff's case would be dismissed:

3          **Ms. Stiglich:** Your Honor, with respect to this matter, the only
      other issue is that in light of his security clearance, we did have
4        discussions about what code section at the end that it would be
      dismissed under if he successfully completes and that's open.
5

6  *Id.* at 3:1-8. The district attorney further agreed that "count one and two" would "trail" successful
7  diversion. *Id.* at 3:8-13. Finally, Plaintiff's counsel at the April 14, 2009 dismissal hearing before
8  Judge Meeks further addressed the negotiated nature of Plaintiff's dismissal. He began the hearing
9  by stating:

10         **Mr. Hinckley:** There's a progress report which updates that
      he's completed the hours *that he was to complete* and he's paid the
11       restitution in full *that he was to pay*. All that remains is the matter
      being dismissed 1385.
12

13 April 14, 2009 Transcript at 2:7-10 (emphases added). He continued:

14         **Mr. Hinckley:** Well here's the thing. If you look at the report,
      it doesn't have a recommendation disposition because it was a
15       *negotiated disposition* between the defense and Judge McCarthy. And
      *the agreement* would be – pretrial was to monitor the – what was to
16       occur, and it was to be dismissed 1385 specifically.

17 *Id.* at 2:20-25 (emphases added).

18     Notwithstanding these repeated references to a negotiated settlement, Ms. Stiglich in her
19 declaration suggests that Plaintiff's community service was merely an attempt by Plaintiff's counsel
20 to paint her client in a positive light so as to sway Judge McCarthy to dismiss Plaintiff's case. *See*
21 Stiglich Decl. ¶ 8 ("We provided evidence of community service as part of the plan to persuade him
22 to dismiss the case."); *id.* ¶ 10 ("Based upon my conversations with Judge McCarthy, in order to put
23 Mr. Peinado in a good light for the Court's benefit, I asked Mr. Peinado to provide me with some
24 evidence of community service."). This account of what transpired, however, is not supported by
25 the transcript of proceedings before Judge McCarthy which unambiguously reflect a negotiated
26 agreement to have Plaintiff perform community service as a condition of dismissal. It is also
27 inconsistent with the pretrial diversion records which reflect that Plaintiff paid the pretrial diversion
28 fees (and restitution) and completed the community service under the informal supervision of

1  pretrial diversion.  *See* Docket No. 95-1.  Further, Ms. Stiglich's declaration also conflicts with her

2  deposition in this matter.  Specifically, Ms. Stiglich was asked the following:

3  >Q. Okay.  And so just to summarize then, in March, it was the
>understanding between you and the district attorney that if Mr.
4  >Peinado completed community service the case would be dismissed;
>however, what statute it would be dismissed under remained an open
5  >question at that time?

6  >A. The manner in which it was dismissed, yes.

7  Deposition of Lidia S. Stiglich ("Stiglich Depo.") at 26:25-27:6.  And:

8  >Q. Right.  But either way it was – the judge was going to
>resolve it either as a diversion dismissal or as a 1385 dismissal, if Mr.
9  >Peinado successfully completed what he was supposed to complete,
>correct?

10

11  >A. I think that's my understanding.

12  *Id.* at 35:11-15.  Accordingly, the deposition reflects Ms. Stiglich's understanding that Plaintiff

13  would have his case dismissed (in a form to be determined by the Court) *if* Plaintiff completed

14  community service.  This is the very essence of a quid pro quo negotiated settlement.  Ms. Stiglich's

15  equivocation in her declaration is at odds with the records of state court proceedings and her own

16  deposition testimony and therefore does not raise a triable issue of fact as to whether the dismissal

17  was part of a negotiated settlement; it was.

18  To be sure, the negotiated nature of the dismissal does not necessarily preclude a finding of

19  favorable termination where the record reflects the opinion of the judge or the prosecutor that the

20  action lacked merit.  *Awabdy*, 368 F.3d at 1068.  While Plaintiff argues that Judge McCarthy's

21  § 1385 dismissal was predicated on his belief that there was insufficient evidence against Plaintiff,

22  as noted above, there is no statement by Judge McCarthy or Judge Meeks on the record that reflects

23  such an opinion.  Rather, Plaintiff relies merely on statements by his criminal defense attorneys to

24  make this showing.

25  For example, at the April 14, 2009 hearing, Mr. Hinckley indicated his belief that the

26  dismissal of the case was to be "1385 for insufficient evidence."  April 14, 2009 Transcript at 2:16.

27  Further, during her deposition, Ms. Stiglich stated that the criminal case was "dismissed 1385,

28  insufficient evidence."  *See* Stiglich Depo. at 13:22.  However, the beliefs or intentions of Ms.

11

Stiglich or Mr. Hinckley are irrelevant to this inquiry – what is essential is that Plaintiff point to some evidence that supports the conclusion that *Judge McCarthy* (or Judge Meeks) dismissed the case based on a finding of "insufficient evidence." Plaintiff has failed to do so. The closest Plaintiff comes to meeting his burden at summary judgment is by arguing that during the April 14, 2009 hearing the district attorney objected to a § 1385 dismissal for insufficient evidence and maintained that the dismissal had to be one based on successful diversion under Cal. Penal Code § 1000.7. After a recess in which the parties went and obtained clarification from Judge McCarthy, they returned to Judge Meeks who, without clarification or explanation dismissed the case stating "Dismiss 1385." Ms. Stiglich – who, based on the transcript of proceedings for April 2009 was not present that day – construes this as reflecting the fact that Judge McCarthy agreed with Plaintiff to dismiss the case for insufficient evidence. *See* Stiglich Depo. at 32:21-25 ("But there were discussions with Judge McCarthy on that day [April, 14, 2009]. The important thing was that it had to be dismissed 1385, insufficient evidence. The D.A. objected to that, and the Judge did it anyway.").

However, the fact that Judge McCarthy decided to base his motion on Cal. Penal Code § 1385 (rather than on the diversion statute) does not mean that he accepted Plaintiff's argument that the dismissal should be predicated on "insufficient evidence." As the California Supreme Court has noted:

> Although a trial court may apply the substantial evidence standard when dismissing pursuant to section 1385, it usually does not. Indeed, the standard for dismissal under section 1385 is quite broad and permits dismissal under a variety of circumstances. For example, a court may dismiss under section 1385 if it believes "the only purpose to be served by a trial or a retrial is harassment of the defendant . . . notwithstanding the fact that there is sufficient evidence of guilt, however weak, to sustain a conviction on appeal." Thus, a section 1385 dismissal may not even "involve a consideration of the merits of the cause."

*People v. Hatch*, 22 Cal.4th 260, 273 (quoting first *People v. Howard*, 69 Cal.2d 491, 504 (1968), and then *Agresti v. Dep't of Motor Vehicles*, 5 Cal. App. 4th 599, 604 (1992)). Thus, Judge McCarthy may well have moved for dismissal simply because Mr. Peinado kept his part of the bargain by completing 25 hours of community service and paying the diversion fee. Such a basis for

1 dismissal would have been entirely consistent with the March 25, 2008 and April 22, 2008 hearings before Judge McCarthy described above. It would have also been consistent with the common practice of employing § 1385 in resolving negotiated settlements and pleas. *See, e.g.*, *id.* (noting that section 1385 is "quite broad and permits dismissal under a variety of circumstances"); *see also People v. Meloney*, 30 Cal. 4th 1145 (2003) ("[T]he Santa Clara court exercised discretion under section 1385 to strike the . . . enhancements that were applicable to the primary offense, 'as a result of the negotiated disposition.'"); *Matthews*, 7 Cal. App. 4th at 1055 ("Also as part of the negotiated disposition, the charges against Matthews were dismissed on the People's motion and pursuant to Penal Code section 1385.").

Plaintiff has the burden of proving favorable termination. *See, e.g.*, *Simmons v. County of Los Angeles*, No. CV 04-0731 SVW (JC), 2009 WL 6769335 (C.D. Cal. Sept. 1, 2009) ("[T]o succeed on his Section 1983 claim based on malicious prosecution, plaintiff has the burden of proof at trial to show . . . the prior criminal proceeding terminated in his favor."); *Metzenbaum v. Metzenbaum*, 121 Cal. App. 2d 64, 68 (1953) (noting that the "burden is on one who seeks to recover damages for malicious prosecution to prove" the elements at issue, including "a judicial proceeding favorably terminated"). Although whether there was favorable termination is usually a question of fact, here, Plaintiff has failed to establish a triable issue of fact; nothing on this record demonstrates that the dismissal "reflect[ed] the opinion of the . . . [superior] court that the action lacked merit or would result in a decision in favor of the defendant." *Awabdy*, 368 F.3d at 1068.[6] *Cf. Hatch*, 22 Cal. 4th at 272 (for purposes of double jeopardy, dismissal under § 385 "should not be construed as an acquittal for legal insufficiency unless the record clearly indicates the trial court applied the substantial evidence standard" in finding that no reasonable trier of fact would find guilt beyond a reasonable doubt").

---

[6] Plaintiff further argues that he never authorized any negotiated settlement and therefore should not be deemed to have "waived" his right to pursue a malicious prosecution action. The Court finds this argument not only utterly contradicted by the record, it is logically unpersuasive. *See Villa v. Cole*, 4 Cal. App. 4th 1327, 1336-37 (1992) (holding that a "party may not voluntarily accept the benefits of a settlement negotiated and accepted on the party's behalf by an attorney, and at the same time disavow the settlement to the extent it is against his or her perceived interests").

13

## V. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Georgopolous' motion for summary judgment.  This case is dismissed and the Clerk of the Court is ordered to close the file.

This order disposes of Docket No. 93.


IT IS SO ORDERED.


Dated:  November 26, 2014

_____
EDWARD M. CHEN
United States District Judge